IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **STRATMARK, LTD.**, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:10-CV-0780-L** |
| | § | |
| **CROSS MEDIAWORKS, INC.**, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Cross MediaWorks, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue, filed June 7, 2010. After careful consideration of the motion, briefs, response, reply, appendices, record, and applicable law, **grants** Defendant's Motion to Transfer Venue, and **denies as moot** Defendant Cross MediaWorks, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction.

**I.    Factual and Procedural Background**

This case arises from a breach of contract dispute. Plaintiff Stratmark, Ltd., ("Plaintiff" or "Stratmark") is a limited partnership with its principal place of business in Richardson, Texas. Plaintiff provides database marketing and vendor services to assist nonprofit organizations in their fundraising activities. In the past, Plaintiff provided various services to Feed the Children ("FTC"), a nonprofit organization, incorporated in Oklahoma with its principal place of business in Oklahoma. FTC is a charitable organization that raises contributions from the general public with the purpose of providing food and support to hungry children worldwide.

Defendant Cross MediaWorks ("Defendant" or "Cross MediaWorks") is a Delaware corporation and has its principal place of business in New York. Cross MediaWorks is a multi-

**Memorandum Opinion and Order- Page 1**

platform media firm that manages an array of media on a targeted basis, including full service advertising agencies, media buying agencies, and broad unwired networks.

The subsequent facts are the basis for contention among the parties. On May 18, 2008, Defendant allegedly entered into a three-year contractual Agreement ("Agreement") with FTC, in which Defendant was to "execute and/or oversee the research, planning, and creative work on all advertising projects needed to promote FTC." Def.'s Mot. at 2. The negotiations relating to the Agreement and the execution of the Agreement both occurred in Oklahoma City, Oklahoma. Beginning on August 1, 2009, Defendant allegedly had the exclusive authority to purchase media and outside services for FTC. Shortly after the execution and commencement of the Agreement, Defendant learned that in or around December 2008, FTC entered into a contract with Plaintiff to provide up to $25 million a year in direct mail advertising services for FTC. Defendant contends that entering into the contract was a breach of Defendant's agreement with FTC.

On March 3, 2010, Marc Krigsman ("Krigsman"), Chief Executive Officer of Cross MediaWorks, traveled to Oklahoma City, Oklahoma, to discuss FTC's recent alleged breaches of contract and Defendant's continuing performance under the Agreement. FTC refused to participate in the discussion and instead instructed Defendant to meet with Plaintiff's President, John Walvoord, in Oklahoma City. In their meeting, Krigsman reaffirmed Cross MediaWorks' contractual rights and intent to perform all advertising services for FTC. On March 16, 2010, attorneys for Cross MediaWorks sent a letter to Stratmark, contending that Cross MediaWorks is a party to a contract with FTC whereby Cross MediaWorks was granted the right to serve as "the exclusive agency of record" for FTC. Def.'s Resp. at 1. Cross MediaWorks demanded that Stratmark cease its services to FTC and that "any further actions by [Stratmark] to interfere with [Defendant's] contractual right

to coordinate all aspects of media for [FTC] under the [A]greement will be deemed to be an intentional and tortious interference with [Defendant's] contractual rights." Def.'s Ex. at C6.

On March 31, 2010, FTC filed a lawsuit against Defendant in the Western District of Oklahoma, seeking a declaration, among other matters, that Defendant waived its right under the Agreement to perform the work being performed by Plaintiff (the "FTC lawsuit"). On April 16, 2010, Stratmark filed its Complaint in this court. In its Complaint, Plaintiff seeks a declaratory judgment of invalidity and/or unenforceability of the alleged Agreement between FTC and Defendant Cross MediaWorks. Compl. at 4. Four days later, Cross MediaWorks filed a lawsuit against Stratmark and others in the Western District of Oklahoma for tortious interference with a contract (the "Cross MediaWorks lawsuit"). The Cross MediaWorks and FTC lawsuits are both assigned to the same judge in the Western District of Oklahoma.[1]

Defendant now moves to dismiss this action for lack of personal jurisdiction or, alternatively, to transfer venue, arguing that it does not possess sufficient minimum contacts with the state of Texas and that none of the proper bases for venue exists in the Northern District of Texas.

## II. Motion to Transfer Venue

Defendant asserts that venue should be in the Western District of Oklahoma. Plaintiff opposes the motion, contending that venue should be in the Northern District of Texas because Plaintiff's choice of form is entitled to great deference. For the reasons herein stated, the court holds that for the convenience of the parties and witness and in the interest of justice, this action should be transferred to the Western District of Oklahoma.

### A. Legal Standard

---

[1] Oklahoma City, Oklahoma, is located in the Western District of Oklahoma. 28 U.S.C. § 116(c).

With respect to section 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). In applying section 1404(a), a district court is to first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003)). Once this initial determination is made, a district court

> turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public interest factors, none of which [is] given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen AG*, 371 F.3d at 203 (citations omitted).

There is no question that the events giving rise to this lawsuit occurred in the Western District of Oklahoma, which encompasses Oklahoma City. *See* 28 U.S.C. § 116(c). The question that must be resolved is whether for the convenience of the parties and in the interests of justice, a transfer should occur from the Northern District of Texas to the Western District of Oklahoma.

Transfer of venue pursuant to 28 U.S.C. § 1404(a) is at the discretion of the court, considering "'[a]ll relevant factors to determine whether or not on balance the litigation would more

conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Peteet v. Dow Chem. Co*., 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847 at 370 (1986)). The moving party bears the burden of demonstrating that a change of venue is warranted. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Carlile v. Continental Airlines, Inc.*, 953 F. Supp. 169, 170 (S.D. Tex. 1997).

A plaintiff's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors strongly favors the moving party, *see Houston Trial Reports, Inc., v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 667 (S.D. Tex. 1999); however, a court may not attribute "decisive weight" to a plaintiff's choice of forum. A "[p]laintiff's choice of forum is clearly a factor to be considered but in and of itself is neither conclusive nor determinative."[2] *In re Horseshoe Entm't*, 337 F.3d at 434.

A reasonable inference is that this action was filed here, in part, because Plaintiff's counsel is located in this district. Stratmark indicated that its counsel is located within Texas, and thus Texas is a more convenient venue. Location of counsel, however, is irrelevant and may not be considered by the court when deciding whether to transfer venue. *In re Horseshoe Entm't,* 337 F.3d at 434. Therefore, the location of Plaintiff's counsel is not considered by the court in this analysis.

---

[2]In the final analysis, this factor had no impact on the court's determination whether to transfer the action to the Western District of Oklahoma.

**Memorandum Opinion and Order- Page 5**

B.  Discussion

Having determined that this action could have been originally filed in the Western District of Oklahoma, the court now considers the eight factors to determine whether it should be transferred to that district.

1. The Four Private Factors

a. The Relative Ease of Access to Sources of Proof

The first private factor, relative ease of access to sources of proof, weighs in favor of transfer. Defendant contends that sources of proof are a considerable distance from the Northern District of Texas, and thus, a trial in the Northern District of Texas will add costly expenses to the litigation and inconvenience witnesses who will have already devoted time and effort to this matter. Def.'s Mot. at 10. The court agrees. This lawsuit arises out of an alleged breach of contract between FTC and Defendant Cross MediaWorks. Any documents alleging the existence of a contract will likely be found in FTC and Cross MediaWorks' offices. FTC maintains its principal place of business within the Western District of Oklahoma, and Defendant maintains its principal place of business in New York City. Although Plaintiff has its offices in Texas, it is unlikely that Plaintiff has any evidence of substance relating to a contract between FTC and Cross MediaWorks, as it was not a party to the contract or involved in the negotiations leading up to the contract. This factor favors transfer to the Western District of Oklahoma because one of the parties to the contract has its principal place of business in that district, the contract was negotiated there, and documents or proof regarding this contract are located in that district.

### b. The Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private factor is neutral. The parties have not identified any unwilling witnesses who would be subject to compulsory process in the Western District of Oklahoma but not in the Northern District of Texas, or vice versa. Moreover, any witness who resides beyond the subpoena power of either court can be required to provide deposition testimony, which can be used by either party at trial because of unavailability of the witness.

### c. The Cost of Attendance for Willing Witnesses

The cost of attendance for willing witnesses weighs in favor of transfer. It is likely that representatives or employees of FTC will be called to testify at trial. FTC is an Oklahoma corporation with its principal place of business in Oklahoma City, which is within the Western District of Oklahoma. If representatives or employees of FTC were subpoenaed to testify in the Northern District of Texas, it is likely that those witnesses would incur significant costs due to traveling. Witnesses will have to travel a distance farther than 100 miles, which increases the inconvenience to the witnesses. *Volkswagen of America, Inc.* 545 F.3d 304, 318 (5th Cir. 2008) (citing *In re Volkswagen I,* 371 F.3d at 204-05) ("When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.") Further, the court is unpersuaded by Plaintiff's argument that their representatives would incur costs in traveling to attend a trial in the Western District of Oklahoma. As the party initiating the lawsuit, Plaintiff should necessarily expect to incur some costs associated with the prosecution of its lawsuit. Moreover, this lawsuit essentially mirrors, or raises related issues to, the lawsuit pending in the Western District of Oklahoma. Plaintiff could have easily joined the initial lawsuit in Oklahoma;

however, more likely than not, it chose to file in this district apparently because its principal place of business is in this district. While a transfer to Oklahoma may impose some minor inconvenience on Plaintiff's representatives, it is not as if this case is "being consigned to the wastelands of Siberia or some remote, distant area of the Continental United States." *Jarvis Christian Coll. v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir. 1988). The distance between this court and the district court in Oklahoma City is approximately 200 miles, essentially the same distance between the competing venues in *Jarvis*. *Id*. Consequently, this factor weighs in favor of transfer.

### d. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Finally, the last private factor addresses all other practical problems that make trial of a case easy, expeditious, and inexpensive. The final factor weighs in favor of transfer to the Western District of Oklahoma. Plaintiff asks this court to declare that a contract between Defendant and FTC is invalid. Currently, there are two related lawsuits pending in the Western District of Oklahoma. FTC filed the first lawsuit on March 31, 2010, against Defendant Cross MediaWorks. Plaintiff seeks a declaration that Cross MediaWorks waived its right under the Agreement to perform the work being performed by Plaintiff Stratmark. This lawsuit was filed two weeks later on April 16, 2010. On April 20, 2010, Defendant Cross MediaWorks filed a lawsuit against Plaintiff Stratmark in the Western District of Oklahoma for tortious interference with a contract. Both the March 31, 2010, and the April 20, 2010 lawsuits have been assigned to the same judge in the Western District of Oklahoma. Practically, it is more expeditious to consolidate all three cases, rather than litigating the dispute in a piecemeal fashion. A lawsuit in the Northern District of Texas simply encourages duplicative litigation on behalf of the parties and unnecessarily consumes scarce judicial resources. Thus, this factor weighs in favor of transfer to the Western District of Oklahoma.

### 2. The Four Public Factors

#### a. The Administrative Difficulties Flowing From Court Congestion.

The first public factor weighs in favor of transfer to the Western District of Oklahoma. Defendant has presented some evidence that the Northern District of Texas' docket is more congested than the Western District of Oklahoma.

> In the twelve month period ending September 30, 20[09], the Western District of Oklahoma had 1,888 newly filed cases and 1,422 pending cases. With six federal judges, it had 315 actions per judgship. Over the same period, the Northern District of Texas had 5,279 newly filed cases and 4,110 pending cases. With 12 federal judges, it has 410 actions per judgeship, which is a 130% higher caseload than in [the Western District of] Oklahoma.

Def.'s Reply at 12; *see also* Def.'s Ex. E. After reviewing Defendant's exhibits and taking judicial notice of the court's own docket pursuant to Rule 201 of the Federal Rules of Evidence, the court determines that the Western District of Oklahoma's docket is mathematically more congested than the Northern District of Texas's docket. Thus, this factor supports a transfer to the Western District of Oklahoma.

#### b. The Local Interest in Having Localized Interests Decided at Home

The second factor weighs in favor of transfer to the Western District of Oklahoma. Defendant contends, and has produced evidence, that all of the events underlying the contract on which the lawsuit is based took place within the Western District of Oklahoma, and therefore residents of the Western District of Oklahoma have more of an interest in this matter than residents of this district. Plaintiff contends that Defendant has not provided any evidence that there is more local interest in Oklahoma to adjudicate a dispute between two parties that are foreign to Oklahoma than there exists in Texas when one of the parties is a Texas entity. The court agrees with

**Memorandum Opinion and Order- Page 9**

Defendant. Plaintiff is asking the court to declare the rights of the parties to a contact that was made in Oklahoma and to which Plaintiff was not a party. Neither the negotiations regarding the Agreement nor the execution of the Agreement occurred in Texas; both occurred in Oklahoma City. Def.'s Mot. at 2. Accordingly, the court finds that the residents of the Western District of Oklahoma have more of an interest in the matter than the residents of this district, and, thus, the second public factor weighs in favor of transfer to the Western District of Oklahoma.

### c. Familiarity with Governing Law and Avoidance of Unnecessary Conflict of Laws

The third and fourth factors, are neutral. The parties have not presented the court with any information relating to the governing law of the contract. Consequently, the court is unable to determine the governing law of the contract and, thus, is unable to assess the validity of the contract or predict any possible conflicts of laws.

### 3. Combined Assessment of the Private and Public Factors

With respect to the private factors, three weigh in favor of transfer, and one is neutral. As to the public factors, two weigh in favor of transfer, and two are neutral. In sum, three factors are neutral, and five factors weigh in favor of transfer. Further, the interest of justice supports transferring this action to a district whereby judicial economy and convenience to the parties can be accomplished. *Frankly, it is nonsensical for this action to remain in this district in light of the two pending related cases in Oklahoma, and this alone is sufficient to transfer this action.* Consequently, this court concludes that for the convenience of the parties and witnesses and in the interest of justice, the more convenient forum for this action is the Western District of Oklahoma.

### III. Motion to Dismiss for Lack of Personal Jurisdiction

As the court will transfer this action to the Western District of Oklahoma, it will deny as moot Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

### IV. Conclusion

For the reasons herein stated, the court **determines** that a majority of the factors and the interest of justice clearly warrant a transfer to the Western District of Oklahoma. Accordingly, the court, pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest fo justice," **transfers** this action to the Western District of Oklahoma. The clerk of the court shall effect the transfer in accordance with the usual procedure. The court **denies as moot** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

**It is so ordered** this 14th day of December, 2010.

Sam A. Lindsay
United States District Judge